UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ELIZABETH NAMARRA, EPHRAIM
OLANI, ASTER NAMARRA,

     Plaintiffs,

v.

ALEJANDRO MAYORKAS, Director, United
States Citizenship and Immigration Services, and
JANET NAPOLITANO, Secretary, Department of
Homeland Security,

     Defendants.

Civil No. 12-1792 (JNE/JSM)
ORDER

This is an immigration lawsuit brought by Plaintiffs Elizabeth Namarra ("Elizabeth"), Ephraim Olani ("Olani"), and Aster Namarra ("Aster"), against Defendant Alejandro Mayorkas in his official capacity as Director of U.S. Citizenship and Immigrations Services ("USCIS") and Defendant Janet Napolitano in her official capacity as the Secretary of the Department of Homeland Security, the agency of which USCIS is a part. All three plaintiffs' applications for adjustment of status are currently pending. Plaintiffs assert that there has been an unreasonable delay in adjudicating their applications. Currently before the Court is Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6), and alternatively, motion for summary judgment.

## I.  BACKGROUND

The Immigration and Nationality Act ("INA") provides that refugees and asylees may have their status adjusted to that of lawful permanent resident. *See* 8 U.S.C. § 1159. Some classes of aliens, however, are ineligible for lawful permanent resident status. One such class includes persons who have engaged in certain terrorism-related activities—these aliens are inadmissible. *See id.* § 1182(a)(3)(B).

1

Until May 2005, asylum-based adjustment of status applications were subject to an annual cap of 10,000. This cap resulted in a backlog of applications, with more than 160,000 asylees waiting for adjudication of their applications. In May 2005, Congress enacted the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., 119 Stat. 231, 302-309 (May 11, 2005), which, among other things, lifted the annual cap on asylum-based applications, gave the Secretary of Homeland Security discretionary authority to exempt certain terrorism-related inadmissibility grounds, and amended the definitions related to the terrorism-related inadmissibility grounds. *See Debba v. Heinauer*, 366 Fed. App'x 696, 698 (8th Cir. 2010). On December 26, 2007, Congress enacted the Consolidated Appropriations Act of 2008 ("CAA"), Pub. L. 110-161, 121 Stat. 1844 (Dec. 26, 2007) (codified in part at 8 U.S.C. § 1182(d)(3)(B)(i)), which expanded the Secretary of Homeland Security's authority to exempt individuals from certain terrorism-related inadmissibility grounds and to exempt certain organizations from being considered Tier III organizations.[1] In response to the passage of the CAA, USCIS issued a policy memorandum on March 26, 2008, directing its field agents to withhold adjudication of certain cases in which the only ground for denial was a terrorism-related inadmissibility provision and the applicant may benefit from a future exercise of the Secretary's discretionary exemption authority. The policy memorandum also directed the agents to reopen and place on hold any adjustment applications that had already been denied if those applications could be considered for a discretionary exemption under § 1182(d)(3)(B) in the future.

---

[1] Under § 1182(d)(3)(B)(i), the Secretary of Homeland Security, the Secretary of State, and the Attorney General must consult to decide whether to exempt certain individuals or certain groups of individuals from the INA's terrorist-related inadmissibility provisions. *See* 8 U.S.C. § 1182(d)(3)(B)(i). The determination of whether a person or group is exempted is judicially unreviewable. *See id.*

Plaintiff Elizabeth Namarra is an Ethiopian who was admitted to the United States as a nonimmigrant student in 1986. She married co-Plaintiff Olani in December 1991. In October 1993, Elizabeth applied for asylum—her application was granted in May 2002. In March 2004, she filed a Form I-485, applying to become a lawful permanent resident. After conducting the required checks, USCIS denied the application in February 2008, finding that Elizabeth was inadmissible under 8 U.S.C. § 1182(a)(3)(B). Elizabeth was found inadmissible under this provision because she has supported, and continues to support, the Oromo Liberation Front ("OLF"), an organization that has been classified as a Tier III terrorist organization.[2] Pursuant to the March 2008 policy memorandum, however, USCIS reopened Elizabeth's application in April 2008 and placed it on hold. No exemption currently applies to Elizabeth, and so her application remains pending.

Plaintiff Ephraim Olani, Elizabeth's husband, is an Ethiopian who was admitted to the United States as a nonimmigrant student in September 1991. After Elizabeth's asylum application was granted, she filed an asylee relative petition on Olani's behalf. The asylee relative petition was approved in April 2004, granting derivative asylum status to Olani. Olani filed an application for adjustment of status in June 2005. His application included information indicating that he was a member and supporter of the OLF. After the FBI completed the required name-check in June 2005, Olani's application was placed on hold pursuant to USCIS policy because of legislation affecting the adjudication of his application, including the REAL ID Act of 2005 and the CAA. Olani is currently inadmissible because he is a member of a terrorist organization and has engaged in terrorist activity. Because no exemption currently applies to Olani, his application for adjustment of status remains pending.

---

[2] According to Defendants, the OLF is an armed guerilla group that uses landmines and bombs, causing numerous civilian and military deaths and injuries.

Plaintiff Aster Namarra, Elizabeth's sister, is an Ethiopian who was admitted to the United States as the dependent spouse of a nonimmigrant student in May 1991. She failed to depart the United States when her husband returned to Ethiopia. Aster applied for asylum in January 1993, and she was ultimately granted asylum in February 2002. Aster applied for adjustment of status in July 2003. Like Elizabeth and Olani, Aster, too, had been and continues to be a supporter of the OLF. USCIS denied her application in February 2008, finding her inadmissible due to terrorism-related activities under 8 U.S.C. § 1182(a)(3)(B). Pursuant to the March 2008 policy memorandum, USCIS reopened Aster's application in April 2008. No exemption currently applies to Aster, and her application remains pending.

Numerous exemptions to the terrorism-related inadmissibility grounds have already been issued under the Secretary's discretionary authority. *See* Canaan Decl. (Ex. 1) ¶ 23 n.1, ECF No. 11 (describing exemptions issued in February 2007, April 2007, June 2008, September 2009, January 2011, March 2011, November 2011, June 2012, and August 2012). Between mid-2006 and August 2012, USCIS has granted 14,885 exemptions. None of the exemptions, however, currently apply to any of the plaintiffs in this case. On August 10, 2012, the Secretary of Homeland Security exercised her discretionary exemption authority for certain individuals who provided material support, solicited funds or members, or received certain military-type training for certain Tier III organizations. Application of this exemption requires USCIS to assess first whether the particular Tier III organization meets certain requirements, such as whether the organization has used child soldiers or engaged in a pattern or practice of torture or genocide. After assessing the organization, USCIS then assesses the individual applicants to determine whether they are eligible for consideration under the exemption. If the applicant is found eligible, then his or her application would be removed from hold and adjudicated. USCIS is

currently in the process of determining whether the OLF meets the qualifications for the exemption.

Plaintiffs filed this action on July 24, 2012, seeking to compel USCIS to implement exemptions, apply those exemptions to Plaintiffs, and adjudicate their applications for lawful permanent residency. Defendants contend that the Court lacks subject matter jurisdiction over this dispute.

## II. DISCUSSION

"Dismissal for lack of subject matter jurisdiction will not be granted lightly." *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996). "Dismissal is proper, however, when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction." *Id.* The party asserting jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

Before addressing the merits of the jurisdictional dispute, the Court first finds it necessary to clarify the real issue presented in this case. It is undisputed that absent a determination regarding whether the OLF, as an organization, qualifies under one of the Secretary's exemptions, there are no exemptions that currently apply to Plaintiffs. All three plaintiffs' applications have been processed and the required checks have been completed, and it has been determined that these plaintiffs are currently statutorily ineligible for an adjustment of status. The precise issue in this case is strikingly different from cases in which USCIS has failed to perform some ministerial task with respect to an application or when USCIS has failed to adjudicate an asylee's application for whom an exemption *does* already exist.

5

Here, there is no claim that USCIS has forgotten about the OLF or about these three individuals, nor is there any assertion that USCIS has simply fallen asleep at the switch. Rather, the parties agree that the Secretary has been issuing exemptions pursuant to her discretionary authority and that USCIS has been processing adjustment of status applications as applicable exemptions are issued. The parties also agree that USCIS is currently and actively considering the OLF, pursuant to the congressionally authorized inquiry, but has yet to make a decision regarding whether or not it qualifies under an existing exemption. Further, Plaintiffs do not dispute that they are properly classified as belonging to a Tier III terrorist organization, that their individual applications have been given attention, and that their applications have been placed on hold pursuant to the CAA and USCIS's policy memorandum regarding terrorism-related inadmissibility grounds. As Plaintiffs seem to acknowledge, everything that USCIS could have done with respect to Plaintiffs' individual applications to date *has* been done. What has not yet been done is an assessment of OLF as a group—and until that assessment is complete, no further analysis of Plaintiffs' applications can occur. Thus, what Plaintiffs ask in this lawsuit is for the Court to compel USCIS to make a determination about the OLF, or at the very least, to compel USCIS to inform Plaintiffs as to when its inquiry will be complete.

Plaintiffs contend that this Court has jurisdiction to compel such actions pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and 28 U.S.C. § 1331. They claim that Defendants have a nondiscretionary duty to adjudicate their applications within a reasonable time and that they have failed to do so. There is a general presumption that agency decisions are reviewable under the APA. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001). Under the APA, a Court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But "a claim under § 706(1) can proceed only where a plaintiff asserts that an

agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). This limitation precludes judicial review of action that is not demanded by law. *Id.* "The principal purpose of the APA limitations . . . is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Id.* Further, the APA does not permit judicial review of federal agency action when such review is precluded by statute, 5 U.S.C. § 701(a)(1), or "committed to agency discretion by law," *id.* § 701(a)(2).

Defendants assert that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of USCIS's decision to place Plaintiff's adjustment applications on hold, pending the issuance of exemptions under the Secretary's discretionary authority. Section 1252(a)(2)(B)(ii) provides:

> [N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

*Id.* Thus, § 1252(a)(2)(B)(ii) applies if: (1) there has been a "decision or action" taken with respect to Plaintiffs' applications; (2) that decision or action is within the discretion of the Secretary of Homeland Security or Attorney General; and (3) the discretion exercised by the Secretary or Attorney General is "specified under this subchapter."

Plaintiffs first contend that because there has been no grant or denial of their applications, there has been no "decision or action" by the Secretary. They assert that USCIS's decision to place their applications on hold is not a "decision or action," but rather is inaction, and thus judicial review of such inaction is not precluded. But if "decision or action," as used in § 1252(a)(2)(B)(ii), referred only to a final decision either granting or denying the application,

7

then word "action" would be entirely superfluous. *See Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1353-54 (S.D. Fla. 2007); *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006). Thus, there must be "actions" other than final "decisions" granting or denying the applications that are also precluded from judicial review. The decision to place Plaintiffs' applications on hold resulted from a series of affirmative acts, including the Secretary's decision to promulgate regulations setting forth the procedure for removing certain applications from the general pool, the review of Plaintiffs' applications to determine whether their cases fell within the categories to be removed from the general pool, and then the actual removal of Plaintiffs' applications from the general pool and the placement of those applications on hold. Further, Plaintiffs do not actually contend that there has been no action with respect to their applications. For instance, they do not assert that their applications have simply been ignored or that there has been no consideration of their applications. In fact, they appear to acknowledge that USCIS made an affirmative decision to place their I-485 applications on hold, pending a decision regarding the applicability of present and future exemptions. *See* Pl.'s Mem. Opp. 11. They also acknowledge that USCIS is currently evaluating the OLF to determine whether it qualifies under one of the Secretary's exemptions. Thus, what Plaintiffs object to is not the absence of any agency decision or action, but rather the decision that the agency made—the decision to place their applications on hold until an applicable exemption was issued.

USCIS's decision to place Plaintiffs' applications on hold, pursuant to agency and congressional policy regarding possible future exemptions for terrorism-related inadmissibility grounds, was a decision within the Secretary's discretion. Further, this discretion is "specified" under the relevant INA provisions. Section 1182(d)(3)(B)(i) provides:

> The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after

8

> consultation with the Secretary of State and the Attorney General, *may determine* in such Secretary's *sole unreviewable discretion* that subsection (a)(3)(B) of this section shall not apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) of this section shall not apply to a group within the scope of that subsection . . . . [N]o court shall have jurisdiction to review such a determination or revocation except in a proceeding for review of a final order of removal pursuant to section 1252 of this title, and review shall be limited to the extent provided in section 1252(a)(2)(D) of this title.

8 U.S.C. § 1182(d)(3)(B)(i) (emphasis added). Section § 1159(b) provides:

> The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's *discretion* and under such regulations as the Secretary or the Attorney General *may* prescribe, *may adjust* to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum.

*Id.* § 1159(b) (emphasis added). Thus, under the statute, the Secretary has "sole unreviewable discretion" to determine whether to exempt an alien from the terrorism-related inadmissibility grounds, as well as the express discretionary authority to adjust an asylee's status and promulgate regulations necessary to exercising that authority. The Court recognizes that other courts, including some within this district, have concluded that because § 1159 does not explicitly commit the pace of adjudication to the discretion of USCIS, the pace is not "specified under this subchapter" and so judicial review of the pace of adjudication is not precluded. *See, e.g.*, *Al Sawad v. Mayorkas*, No. 11-cv-2923, 2012 WL 3238258 (D. Minn. Aug. 7, 2012); *Rambang v. Mayorkas*, Civil No. 11-3454, 2012 WL 2449927 (D. Minn. June 27, 2012); *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927 (D. Minn. 2011); *Sawad v. Frazier*, No. 07-1721, 2007 WL 2973833 (D. Minn. Oct. 9, 2007). Other courts, however, have concluded that the pace of adjudication is embraced within the Secretary's discretionary authority specified under the INA. *See, e.g.*, *Seydi v. U.S. Citizenship & Immigrations Servs.*, 779 F. Supp. 2d 714 (E.D. Mich. 2011); *Singh v. Napolitano*, 710 F. Supp. 2d 123 (D.D.C. 2010); *Hu v. Chertoff*, No. Civ. S-06-2805 WBS EFB, 2007 WL 1515067 (E.D. Ca. 2007); *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006).

The Court finds the reasoning expressed in these latter cases more persuasive. An interpretation of § 1159 that commits the adjustment decision itself, as well as the authority to promulgate regulations governing the adjudication process, to the Secretary's discretion, but excludes from the Secretary's discretion the time required to arrive at the adjustment decision, merely puts form over substance. The express grant of discretionary authority regarding the process by which adjustment applications are to be considered, as well as the Secretary's explicit discretionary authority to exempt certain groups of applicants, would be meaningless if the Court could impose upon the Secretary some judicially-created time requirement. The Court is not equipped—nor can it be—to determine how much time the Secretary needs to adequately assess various terrorist organizations and make determinations affecting foreign policy and national security. Thus, the statutory grant of discretion to promulgate regulations governing *how* to make adjustment decisions necessarily carries with it the discretion to determine *when* those adjustment decisions will be made. *See Singh*, 710 F. Supp. 2d at 129-30.

Further, it is a "basic tenet of administrative law that agencies should be free to fashion their own rules of procedure" and "to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543-44 (1978) (internal quotation marks omitted). Here, the Secretary has chosen, through her delegate—the USCIS Director—to issue a policy memorandum dictating the procedures under which the agency should consider certain groups and categories of applicants. This procedure, including a procedure for placing on hold certain applications involving terrorism-related activities, allows the Secretary to exercise her other discretionary authority to exempt certain categories of applicants from the terrorism-related

10

inadmissibility grounds. Thus, the Secretary has the discretion to place the Plaintiffs' applications on hold, and this discretion is "specified" under the relevant statutory provisions.

Even if the jurisdiction-stripping statute did not apply, 5 U.S.C. § 706(a)(2) would nevertheless preclude judicial review, as USCIS's decision to place Plaintiffs' applications on hold pursuant to congressional and agency policy is a matter "committed to agency discretion by law." While "[s]ubsection (a)(1) is concerned with whether Congress expressed an intent to prohibit judicial review[,] subsection (a)(2) applies 'in those rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply."'" *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)).

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. . . . [I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

*Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "An important factor in discerning whether there is a 'meaningful standard' for judicial review is whether the agency decision 'involves a complicated balancing of a number of factors which are peculiarly within its expertise.'" *Ngure v. Ashcroft*, 367 F.3d 975, 982 (8th Cir. 2004) (citation omitted). "In that situation, '[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.'" *Id.* (citation omitted).

It is undisputed that USCIS's decision as to whether to adjust an asylee's status, especially an asylee who is a member or supporter of a recognized terrorist organization, "involves a complicated balancing of a number of factors which are peculiarly within its

11

expertise." Moreover, the balancing of these factors could not be farther removed from the Court's expertise. The Court emphasizes the significance of these plaintiffs' particular situation. Their applications are not on hold because USCIS refuses to make a determination about these plaintiffs as individuals. Rather, they are pending because USCIS has yet to make a determination about a terrorist organization, the OLF, as a group. A decision affecting an individual is considerably different than a decision about a terrorist group as a whole, and the factors that are to be balanced are also significantly different when dealing with a terrorist organization rather than an individual.

The exemption process requires consultation between the Secretary of State, the Secretary of Homeland Security, and the Attorney General. Sufficient time is required for information-gathering and research by law enforcement and intelligence agencies. Further, the status and activities of a foreign organization are dynamic and fluid, and thus the time required for an inquiry into that organization must surely vary tremendously. For example, the Secretary's assessment of a particular Tier III terrorist organization may depend on, among other things: the changing political environment of the organization's country or region; shifting policies or leadership within the organization; whether the organization continues to be active and if so, in what sort of activities it engages; and ongoing concerns and goals of the United States with respect to its foreign policy. If the Court were to inquire into the reasonableness of the pace of adjudication, it would have to examine in full the Secretary's decisionmaking process, including the Secretary's rationale for assessing some Tier III organizations before others, how the Secretary has chosen to allocate her time and resources, what information the Secretary currently possesses regarding the OLF, what efforts the Secretary has made and will make to acquire information about the OLF, and what national security and foreign policy

concerns may be affecting the Secretary's decisionmaking. Such a review by this Court would not only be unwise, but it is jurisdictionally prohibited, as these are matters clearly within the discretion of the Secretary and beyond this Court's ability to review. It is well established that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *I.N.S. v. Aquirre-Aguirre*, 526 U.S. 415, 425 (1999). Absent jurisdiction to assess the factors that would go into a determination regarding the reasonableness of the delay, any conclusion by this Court about what constitutes a reasonable or unreasonable delay would be arbitrary guesswork.

The Court has absolutely no basis upon which to opine on the reasonableness of the delay in adjudicating these plaintiffs' applications for adjustment of status. Given the fact that Plaintiffs' applications are on hold because Plaintiffs belong to a Tier III terrorist organization, and because there has not yet been a determination regarding that particular organization, there is no meaningful standard against which the Court could measure the reasonableness of the pace of adjudication of these plaintiffs' applications. Under these circumstances, there is nothing from which this Court could make a reasoned decision regarding the time necessary for the Secretary and USCIS to conduct their time-intensive, politically-sensitive, interagency evaluations. Without a basis upon which to make a reasoned decision, the Court is hard-pressed to conclude that it can make a decision at all. In the absence of "judicially manageable standards . . . for judging how and when an agency should exercise its discretion," *Heckler*, 470 U.S. at 830, review of this question is precluded under § 706(a)(2) of the APA, as it is a matter "committed to agency discretion by law."

The Court acknowledges Plaintiffs' frustration at not having an answer, and not knowing when they will have an answer, but for the above reasons, the Court simply cannot delve into the reasonableness of USCIS's evaluation of the OLF and Plaintiffs' applications. Some consolation may be had, perhaps, in the fact that USCIS attests—and Plaintiffs do not dispute—that USCIS *is* currently undertaking an evaluation of the OLF, and that as a result of the August 2012 exemption, Plaintiffs may soon have a final adjudication of their applications.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Docket No. 8] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 20, 2013

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
